UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Respondent, v. RAJESHWAR SINGH, Movant. | No. 2:13-cr-0084 TLN CSK-2 (No. 2:22-cv-1013 TLN CSK P) FINDINGS AND RECOMMENDATIONS |

Movant Rajeshwar Singh is a federal prisoner proceeding through counsel with a motion to vacate, set aside, or correct his 2018 sentence pursuant to 28 U.S.C. § 2255. The motion is fully briefed. As discussed below, the § 2255 motion should be denied.

I. PROCEDURAL HISTORY

On March 14, 2013, a federal grand jury returned an indictment charging movant and two co-defendants in a scheme to defraud. (ECF No. 1.) Movant was charged with four counts of mail fraud, in violation of 18 U.S.C. § 1341; four counts of bank fraud, in violation of 18 U.S.C. § 1344; and four counts of making false statements on loan and credit application, in violation of 18 U.S.C. § 1014. (Id.) On April 5, 2013, movant made his initial appearance and pled not guilty to all counts in the indictment. (ECF Nos. 9, 55.)

Jury trial commenced on October 24, 2017, before U.S. District Judge Garland E. Burrell,

Jr., and lasted eight days. (ECF Nos. 127-38.) On November 8, 2017, movant was convicted of multiple counts of mail fraud, bank fraud, and false statements. (ECF No. 138.)

On November 9, 2018, movant was sentenced to 135 months imprisonment on each of Counts 1 through 12, to be served concurrently, for a total term of 135 months, followed by a 36-month term of supervised release. (ECF No. 256. 259.) Judgment was entered on November 16, 2018. (ECF No. 259.)

On November 20, 2018, movant filed an appeal. (ECF No. 266.) On April 6, 2020, the case was reassigned to U.S. District Judge John A. Mendez. (ECF No. 311.) On April 20, 2020, movant was released from custody pending the conclusion of his appeal. (ECF No. 323.)

On March 19, 2021, the conviction was affirmed. United States v. Rajeshwar Singh, Case No. 18-10466 (9th Cir. 2021). (ECF No. 346.) Movant was ordered to surrender to federal authorities and re-enter prison on June 28, 2021. (ECF No. 356, 392.)

Movant filed the motion to vacate, set aside or correct sentence on June 13, 2022. (ECF No. 409.) On October 11, 2022, this case was reassigned to U.S. District Judge Troy L. Nunley. (ECF Nos. 425-26.) The government filed an opposition to the motion on October 17, 2022. (ECF No. 427.) Movant filed a reply on November 12, 2022. (ECF No. 429.)

On April 8, 2024, the case was reassigned to U.S. Magistrate Judge Chi Soo Kim. (ECF No. 446.)

On May 9, 2025, movant filed a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) (compassionate release). (ECF No. 448.) On July 1, 2025, the district court denied the motion. (ECF No. 463.)

On August 29, 2025, movant filed a second, pro se motion to vacate or reduce sentence. (ECF No. 466.) The motion was subsequently withdrawn. (ECF No. 470.)

II. FACTS

From about September 2006 to about May 2007, movant Rajeshwar Singh, co-defendant Surjit Singh, and co-defendant Anita Sharma knowingly devised, participated in, and executed a material mortgage fraud scheme involving three uncharged conspirators, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material

facts. (ECF No. 229 (Presentence Report ("PSR") at ¶ 5.)

The scheme covered a total of 14 fraudulently obtained properties in California. (Id., ¶ 6.) It involved 28 real estate transactions, including fraudulently obtained mortgage loans, in the amount of over $9 million, plus $1.6 million in fraudulently obtained loans not charged in the indictment. (Id.) Movant's father Surjit Singh was the main leader and organizer of this mortgage fraud scheme. (Id., ¶ 9.) Movant's sister testified that Surjit Singh and movant controlled the family business, and Surjit Singh controlled the money from it. (Id., ¶ 19.)

Movant was a licensed real estate salesperson and worked as a loan officer for two mortgage brokerage companies. (Id., ¶ 10.) He sold properties to straw buyers whom he or his father recruited, and he recruited other sellers to sell properties to straw buyers. He was also the loan officer for all the properties sold in this scheme. (Id.)

Movant purchased seven properties between November 2004 and December 2006. For six of the properties, the deeds of trust, which movant signed, falsely reflect that he was going to reside in the properties as his primary residence. Movant sold all seven properties to straw buyers in this scheme. (Id., ¶ 11.) Movant prepared paperwork submitted to mortgage lending institutions on behalf of the straw buyers that contained false and fabricated supporting documentation, including false CPA letters, false verifications of rent, false verifications of employment, false screen printouts from bank accounts, false verifications of deposits, and false verifications of income. (Id., ¶ 12.) Movant made payments to several straw buyers in exchange for their participation in the scheme, and he directed them or one of his associates to make multiple mortgage payments on the properties for a limited amount of time to prevent immediate defaults on the fraudulent loans. (Id., ¶¶ 12, 13.) After the homes were sold to the straw buyers, Surjit Singh's family members who were selling homes in the scheme received their sellers' proceeds, and commission fees were paid to the brokers that handled the real estate transactions. (Id., ¶ 20.)

Movant significantly profited from these real estate transactions in furtherance of the scheme. He received over $830,000 from the proceeds of selling the seven properties he owned and another approximately $110,000 in lender commissions. (Id., ¶¶ 22, 23.) Movant was held accountable for approximately $5.5 million. (Id., ¶ 25.) In February 2018, after his jury trial and

conviction on multiple counts of mail fraud, bank fraud, and false statements, movant declined to speak about the offenses on the advice of counsel. (Id., ¶ 29.)

III. STANDARD OF REVIEW

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States. United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice. . . ." Davis v. United States, 417 U.S. 333, 346 (1974).

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant asserts three claims alleging ineffective assistance of counsel: (1) counsel incompetently advised movant to reject a favorable plea offer, resulting in his trial and conviction; (2) counsel had a *de facto* conflict of interest between movant and Surjit Singh, which allowed Surjit to control what movant did in the case; and (3) counsel's multiple deficiencies at trial had a cumulative prejudicial effect.

A. Standards Governing Ineffective Assistance of Counsel Claims

To prevail on a claim of ineffective assistance of counsel, a movant must show that her trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Under the first prong of the Strickland test, a movant must show that counsel's conduct failed to meet an objective standard of reasonableness. Strickland, 466 U.S. at 687. There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). Movant must rebut this presumption by demonstrating that counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial

strategy." Strickland, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from counsel's perspective at the time it occurred, without the benefit of hindsight. Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

"A deficient performance is one in which counsel made errors so serious that [he] was not functioning as the counsel guaranteed by the Sixth Amendment." Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir. 1986) (citing Strickland, 466 U.S. at 687). To show that his trial counsel's recommendation to reject the plea deal rose to the level of constitutionally deficient conduct, movant must show that his trial counsel's advice was a "gross mischaracterization of the likely outcome presented in the case, combined with the erroneous advice on the possible effects of going to trial." Id. at 865. To merit an evidentiary hearing on the issue, movant "must establish that his allegation[s], if proven, would establish a constitutional deprivation." Turner v. Calderon, 281 F.3d 851, 890 (9th Cir. 2002) (internal quotation marks and citation omitted).

The second prong of the Strickland test requires a movant to show that counsel's conduct prejudiced movant. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." Id.

B. Plea Offer

Movant asserts that his counsel's advice to reject a "very favorable" plea offer constituted ineffective assistance and was prejudicial. The United States argues that, because the plea offer was a "package deal" with co-defendant Surjit Singh, and Surjit rejected his side of the plea, the favorable offer was never available to movant, and he has not shown prejudice from counsel's

actions.

Counsel Erik Babcock represented movant during the pretrial period and trial. (ECF No. 409-3 ("Ex. C"), ¶ 2.) At movant's April 5, 2013 arraignment, then U.S. Magistrate Judge Dale A. Drozd informed him that all of the counts against him were punishable by "up to 30 years in prison, fine of up to $1 million or both fine and imprisonment, [and] a five-year term of supervised release[.]" (ECF No. 427-4 at 16.)

On approximately February 9, 2016, counsel informed movant of a plea agreement offered by the Government. Under the terms of the plea, movant would plead guilty to one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. (ECF No. 409-1 ("Ex. A") at 3.) The Government would agree to adjustments resulting in a sentencing range of 24-30 months, with the prosecutor recommending the low end of the range. (Ex. A. at 7-9.) The maximum sentence the Court could impose would be five years of incarceration, a fine of $250,000, and a three-year period of supervised release. (Ex. A at 7-8.)

Counsel informed movant that the plea agreement was a "package deal"; in order for movant to accept the offer, his father/ co-defendant Surjit Singh also had to accept the agreement the Government offered him and plead guilty. (Ex. C, ¶ 6.) Movant's plea agreement provided as follows:

> The defendant acknowledges and understands that the plea offer made to him here by the government is a "package offer." That is, the defendant understands that the offer made to him is conditioned on co-defendant Surjit Singh pleading guilty according to the terms of his respective plea offer. The defendant understands that if his co-defendant declines, refuses or fails to plead guilty according to his/her respective offer, then . . . the defendant will not be allowed to enter a plea of guilty to the offer made to him by the government.

(Ex. A at 4.)

Movant declares that his father was "controlling" him during the period of the plea offer, such that he could not make independent choices. (Ex. C, ¶ 7.) Movant further declares that his own lawyer, Babcock, "was visibly directed by my father during the plea negotiation stage." (Id.) Babcock advised movant that "he did not consider the 5-year plea offer to be a good offer and he

encouraged me to follow my father's lead and go to trial." (Ex. C., ¶ 8.) Movant admits that he "did not want to go to trial at all. But Mr. Babcock never really took effective action to make sure that I was not directed or controlled by my father" though Babcock "knew the controlling nature my father exercised in our case." (Ex. C., ¶ 12.)

Surjit Singh declined to sign the plea agreement offered to him. (See Ex. C., ¶ 12.) His claim of ineffective assistance against his own lawyer, Colin Cooper, with respect to his side of package deal was the subject of a separate § 2255 motion, determined by the undersigned to lack merit in findings adopted by the district court. See United States of America v. Singh, No. 2:13-cr-0084-TLN-CSK, 2026 WL 1961883 (E.D. Cal. July 7, 2026). With the package deal off the table, both Surjit and movant proceeded to trial.

The Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). To prevail on a claim of ineffective assistance of counsel in connection with that stage of a criminal proceeding, a petitioner must demonstrate "gross error on the part of counsel." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." Id. In addition, the Ninth Circuit has stated: "If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." U.S. v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003).

However, defense counsel is not "required to accurately predict what the jury or court might find." Turner, 281 F.3d at 881. Nor is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881. As the Ninth Circuit has observed, while counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." Id. Rather, counsel is "required to give the defendant the tools he needs to make an intelligent decision." Turner, 281 F.3d at 881. The relevant question is not whether "counsel's advice [was] right or wrong, but ... whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v.

Richardson, 397 U.S. 759, 771 (1970).

Here, counsel advised movant of the plea offer and its terms, including that it was a package deal contingent on co-defendant Surjit Singh agreeing to plead guilty. Counsel predicted that movant would be better off going to trial than pleading guilty and receiving a sentence of up to five years. Despite the trial's worse outcome, movant has not shown this advice to fall outside the range of competence for criminal defense attorneys.

Moreover, movant has not shown prejudice from counsel's actions. Even if movant had wanted to take the plea offer, it was expressly contingent on Surjit's decision to plead guilty and accept his half of the package deal. When Surjit rejected the agreement and opted to go to trial, movant's potential plea deal evaporated. Because any legal advice concerning the pros and cons of movant's plea offer was ultimately irrelevant, movant cannot show prejudice from his counsel's actions.

C. Conflict of Interest

Movant asserts that his counsel provided ineffective assistance due to counsel's "divided loyalties" between movant and Surjit Singh. Movant argues that Babcock failed to provide independent, competent representation as required by the Sixth Amendment. The United States argues that movant has not demonstrated that Babcock had conflicted loyalties or was controlled or directed by Surjit. Rather, the United States argues, movant admits that he himself was controlled by Surjit, which does not constitute a basis for Sixth Amendment claim.

Movant declares that Babcock "worked closely with my father and my father's lawyer for a long time before we were formally charged." (Ex. C, ¶ 1.) Father Surjit and movant son had their own attorneys during the pre-trial investigation and trial. (Ex. C., ¶ 2.) During these years, movant declares, "Attorney Babcock was visibly directed by my father Surjit, and I was not allowed to do anything independently of what my father wanted the lawyers to do." (Ex. C, ¶ 5.) Movant avers that Babcock never discussed "severance of defendants based upon antagonistic defense[s]" asserted by movant and Surjit, who "was blaming me for all the conduct in the case because my name was in most of the [allegedly fraudulent transactions]." (Ex. C, ¶ 10-11.) Movant later learned "that Babcock characterized me as unable to even go to the bathroom

without my father's permission." (Ex. C., ¶12.) At trial, movant's sister testified that the family and family businesses were controlled by Surjit. (ECF No. 409-6 (Ex. F) at 4.)

The Ninth Circuit has held that,

> [u]nder the Sixth Amendment, when "a constitutional right to counsel exists, ... there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). To establish a Sixth Amendment violation based on a conflict of interest when . . . a defendant did not object at trial, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). An "actual conflict" means "a conflict of interest that adversely affects counsel's performance," not simply a "theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171, 172 n.5 (2002). When a defendant makes this showing, the court presumes prejudice because the "assistance of counsel has been denied entirely or during a critical stage of the proceeding." Id. at 166; Sullivan, 446 U.S. at 349–50. This is an exception to the typical Strickland standard, which requires a showing of prejudice.

Noguera v. Davis, 5 F. 4th 1020, 1035 (9th Cir. 2021) (parallel citations omitted). The court explained that the issue is whether a conflict existed that "*affected counsel's performance*—as opposed to a mere theoretical division of loyalties." Id. at 1037 (emphasis in original) (citing Mickens, 535 U.S. at 171). "To make this showing, the petitioner must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Id. (citation altered). Overall there is "a strong presumption that a lawyer adheres to his duty of strict loyalty to a client[.]" Id. at 1039.

Here, movant alleges a "theoretical division of loyalties," i.e., Babcock was not fully on movant's side but was controlled in some way by Surjit. However, movant's statements that (1) Babcock was "visibly controlled" by Surjit and (2) that movant "was not allowed to do anything independently" of Surjit's directions, are conclusory. Nor do they entirely make sense, given that movant was in his early forties during the relevant period, with total assets of over $16 million and a net income of $15,500 per month. (PSR at 3, ¶ 72.) He had a wife and three children, volunteered in religious activities, and was relied on by many for "emotional and mental

guidance." (Id., ¶¶ 60-61.) In short, movant was a high-functioning adult. Within the family, he may have been accustomed to acting as his father's obedient child, but under federal law, he was a competent individual responsible for his own choices. If movant continued to submit to his father's dictates during the pretrial stage, this intra-family dynamic cannot be laid at defense counsel's feet. See Ex. C, ¶ 1 (declaring Babcock "never really took effective action to make sure that I was not directed and controlled by my father.").

Nor is it clear what, if anything, movant would have gained if he had gone against Surjit's wishes in the post-indictment period. Noguera requires that movant show some "plausible alternative defense strategy" that counsel might have pursed but for his allegedly divided loyalties. Insofar as movant argues that Babcock should have urged him to take the Government's offer of a package plea, that offer was mooted by Surjit's rejection of the offer and decision to go to trial.

The other option movant suggests Babcock should have pursued was advising movant to sever his defense from his father's. There is a preference in the federal system for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 537 (1993). Federal Rule of Criminal Procedure 14 provides that a court may sever counts and conduct separate trials for those counts "[i]f the joinder of offenses ... appears to prejudice a defendant or the government[.]" Fed. R. Crim. P. 14. Rule 14 requires the moving party to demonstrate "manifest prejudice" which is more "exacting" than the standard under Rule 8. United States v. Jawara, 474 F.3d 565, 579 (9th Cir. 2007). "The test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." United States v. Inzunza, 2005 WL 8160867, at *2 (S.D. Cal. Mar. 10, 2005). Here, movant has made no showing that a motion to sever his case from Surjit's would have been successful, had his counsel advised it.

Nor has movant shown that his and Surjit's trial defenses were "antagonistic." He cites nothing in Surjit's lawyer's arguments to the jury that premised Surjit's innocence on movant's guilt or used him as the fall guy for the mortgage scheme. Rather, Surjit's attorney characterized the Singhs as collectively innocent of wrongdoing. See, e.g., ECF No. 427-2 (Ex. 3) at 120 ("This

is a case about whether or not Surjit Singh, Raj Singh or Anita Sharma took the money and ran. They did not."), 121 ("It's tragic because the government here is prosecuting Surjit, Raj and Anita despite not prosecuting the bankers who funded these loans."), 124 ("Here you will not be presented with any evidence . . . that Surjit, Raj or Anita intended to defraud anyone."), 402-403 ("What the Singhs were doing was what a lot of people were doing. They were buying and selling homes. . . . Everybody was doing it."). Moreover, the jury was instructed to "decide the case of each defendant on each crime charged against that defendant separately. Your verdict on any count as to any defendant should not control your verdict on any count or as to any other defendant." Ex. 3 at 180; see Zafiro, 506 U.S. at 540 ("[J]uries are presumed to follow their instructions."). Movant has not shown that counsel was ineffective based on a conflict of interest under the Noguera standard.

D. Cumulative Error

Movant argues that the cumulative effect of trial counsel's errors deprived him of effective assistance under the Sixth Amendment. First, movant argues that counsel's "closing argument and theory of the case were unmoored from the evidence and from the law," paving the way to a "devastating rebuttal" by the Government. (ECF No 409 at 24.) Second, movant cites counsel's failure to protect him against Surjit's "ever-present control[.]" (Id.) Third, movant cites counsel's "failure to move for a Rule 29 judgment of acquittal" at the close of the Government's case. (Id. at 25.) Fourth, movant cites counsel's failure to object to a jury instruction on intent to defraud. (Id.)

As to counsel's "closing argument and theory of the case," Babcock asserted several arguments challenging the Government's case against movant. He urged the jury to hold the government to its burden of proof as to the elements of the charges, arguing, e.g., that there was reasonable doubt that errors in the loan applications were material when the banks were "bending over backward to approve these loans." (Ex. 3 at 408, 412-414.) Counsel argued that movant lacked intent to defraud, noting he had merely a conditional real estate license with no "hands-on experience" doing real estate deals. (Id. at 418-419.) Counsel argued that there was no proof "the mails were used" in the mail fraud counts. (Id. at 421.) Counsel also attacked the credibility of

government witnesses. (Id. at 408-411, 416-418.) Based on the evidence presented, counsel argued,

> There are reasons to doubt . . . that this was a deliberate plan to cheat the banks. There's reasons to doubt whether my client intended to defraud the banks. There's reasons to doubt whether or not my client meant to cause the mailings charge in this case. So I'm asking you to vote not guilty on all 12 counts.

Id. at 427.

"The right to effective assistance extends to closing arguments. Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should 'sharpen and clarify the issues for resolution by the trier of fact,' but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential[.]" Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003) (internal citations omitted). Movant has not shown ineffective assistance with respect to counsel's closing argument or "theory of the case." While in hindsight some of counsel's tactical decisions may appear weak to a defendant convicted of multiple counts at trial, that scenario does not rise to the level of a constitutional violation.

Movant next argues that counsel's failure to protect him from his father's "control" constitutes ineffective assistance. This argument lacks merit, as discussed above.

Third, movant argues that counsel erred by failing to make a motion for acquittal based on insufficiency of the evidence pursuant to Rule 29 at the close of the Government's case. See Fed. R. Crim. P. 29(a). The United States points out that none of three defense attorneys involved in the case made a Rule 29 motion. The question raised by such a motion is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979). Given the weight of the evidence adduced at trial against movant, he has not shown his counsel was unreasonable in failing to make a Rule 29 motion. See, e.g., United States

v. Ontiveras, 487 Fed. App'x 387 (9th Cir. 2012) (unpublished) (counsel's failure to make a Rule 29 motion was neither deficient nor prejudicial under Strickland where record shows defendant committed acts sufficient to be charged with crimes alleged).

Lastly, movant argues that counsel erred by using the Ninth Circuit's pattern jury instruction defining "intent to defraud" as "the intent to deceive *or* cheat." See ECF No. 427-5 (Ex. 7) (emphasis added). Years after movant's trial, the Ninth Circuit held that intent to defraud "requires the intent to deceive *and* cheat." United States v. Miller, 953 F.3d 1095, 1101 (9th Cir. 2020) (emphasis in original). None of the defense attorneys at movant's trial took issue with the pattern jury instruction on intent to defraud, and Babcock did not act unreasonably by failing to object to this instruction. In sum, movant has not shown he is entitled to relief due to cumulative prejudicial error.

## V. MOTION FOR EVIDENTIARY HEARING

Movant seeks an evidentiary hearing on his ineffective assistance claims under 28 U.S.C. § 2255. In order to warrant an evidentiary hearing, movant "must establish that his allegation[s], if proven, would establish a constitutional deprivation." Turner, 281 F.3d at 890. Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). Therefore, to warrant a hearing, the movant must make specific factual allegations which, if true, would entitle him to relief. McMullen, 98 F.3d at 1159. Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

Here, movant's allegations of ineffective assistance on multiple grounds, when viewed against the record, fail to state a claim for relief for the reasons set forth above. Movant has not made specific factual allegations which, if true, would entitle him to relief, and his request for an

evidentiary hearing should be denied.

## VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside, or correct his sentence (ECF No. 409) pursuant to 28 U.S.C. § 2255 be denied; and

2. The Clerk of the Court be directed to close the companion civil case No. 2:22-cv-1013 TLN-CSK.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 29, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/rsingS0084.257